

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

January 8, 2014

**BY ECF & ELECTRONIC MAIL**

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
40 Centre Street
New York, New York 10007

      Re:    **United States v. John Ryan**,
             **13 Cr. 258 (RJS)**

Dear Judge Sullivan:

      The defendant is scheduled to be sentenced in the above-referenced case on Friday, January 10, 2014, at 2:30 p.m. The Government respectfully submits this letter in connection with that sentencing and in response to the defendant's sentencing memorandum filed January 1, 2014 ("Def. Mem."). For the following reasons, the Government respectfully requests that the Court impose a sentence within the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") range of 12 to 18 months' imprisonment. The Government submits that such a sentence is sufficient, but not greater than necessary, to achieve just punishment, to promote respect for the law, and to achieve adequate deterrence.

## Background

### A.    Offense Conduct

      As summarized in the United States Probation Office's ("Probation Office") Presentence Investigation Report dated January 6, 2014 ("PSR"), during the relevant time period from in or about October 2010 through in or about September 2011, John Ryan (the "defendant") was a member of Local Union No. 40 of the International Association of Bridge, Structural and Ornamental and Reinforcing Iron Workers ("Local 40" or "Union"). At the time, the Union was party to a collective bargaining agreement (the "CBA") with DCM Erectors, Inc. ("DCM") and Solera/DCM, JV ("Solera/DCM"), who had contracted with the Port Authority of New York and New Jersey ("Port Authority") to perform construction work at the World Trade Center ("WTC") Transportation Hub, among other projects at the WTC construction site. The

defendant was employed by both DCM and Solera/DCM and served as the union shop steward at the Transportation Hub.[1] (PSR ¶¶ 7-9, 11).

For the 12 months from October 2010 through September 2011, the defendant was paid compensation of approximately $268,935 by DCM and approximately $223,000 by Solera/DCM, for a total of $491,935 in compensation for work that he purportedly performed at the WTC Transportation Hub. (PSR ¶ 12). As the investigation by the United States Department of Labor ("DOL") and the Port Authority's Office of Inspector General ("OIG") revealed, however, the defendant was not actually present at the job site – as is required of the union shop steward – for all of the hours for which he received compensation from the two employers. (PSR ¶ 14).

For example, on eight days during the month of May 2011, the defendant was paid for approximately 131 regular, overtime, and/or double-time hours of work at the WTC Transportation Hub, although the Port Authority had no record of the defendant "swiping-in" at the job site (as is required) on those days. In addition, phone records – and, in some cases, Atlantic City casino records – indicated that the defendant was in New Jersey, not Manhattan, on those days. (PSR ¶¶ 15-20). Altogether, the defendant received approximately $120,000 in compensation from DCM and DCM/Solera to which he was not entitled. (PSR ¶ 21).

**B.    Procedural History**

On January 30, 2013, the defendant was arrested by DOL and OIG agents near his home in Howell, New Jersey. (PSR ¶ 22). After being advised of his <u>Miranda</u> rights, the defendant admitted that there were some days during the relevant time period that he did not work at all at the WTC Transportation Hub, and other days where he only worked one shift, although in either case he received compensation for two shifts. The defendant further admitted that he was aware of the number of hours that were being reported for him because the defendant was responsible for reporting all union members' hours, including his own, to the union as part of the weekly job steward reports that he prepared. The defendant was presented on the federal criminal complaint and released on bail the same day. (PSR ¶ 5).

As counsel for the defendant notes in the defendant's sentencing memorandum, following his arrest, the defendant proffered with the Government on two occasions. (Def. Mem. at 3). Although the Government believes that the defendant was truthful and forthcoming during the two proffers, he was not in the position to provide substantial assistance. Accordingly, the Government did not enter into a cooperation agreement with the defendant.

---

[1]   As set forth in the CBA, the shop steward's duties included, among other things: representing other union member-employees with respect to grievances; ensuring compliance with the provisions of the CBA; and timely filing complete and accurate weekly shop steward's reports with the Union and various Union benefit funds that document the names of, and number of hours worked by, Union members at the job site. (PSR ¶ 10).

Hon. Richard J. Sullivan
January 8, 2014
Page 3 of 7

On April 8, 2013, the defendant waived indictment and entered a not guilty plea to a felony information charging him with one count of accepting prohibited labor payments, in violation of 29 U.S.C. §§ 186(a)(1), (b)(1) and (d)(2). (PSR ¶ 1). On August 29, 2013, the defendant appeared before Your Honor and pled guilty to the information pursuant to a plea agreement with the Government. (PSR ¶ 3). In the plea agreement, the parties stipulated that the applicable advisory Guidelines range is 12 to 18 months' imprisonment and that the applicable Guidelines fine range is $3,000 to $15,000.[2] (PSR ¶ 4(G)). Pursuant to the plea agreement, the defendant also agreed to forfeit $120,000 to the United States. (PSR ¶ 4(H)).

C.     **History and Characteristics of the Defendant**

The defendant was born in Brooklyn, New York, and is 57 years old. (PSR ¶¶ 49 & 54). He currently lives in New Jersey with his wife and has two children. (PSR ¶ 51). Since 1979, the defendant worked as an ironworker affiliated with Local 40. (PSR ¶ 67). For the past 12 years, the defendant worked as a union shop steward. (Id.). After the defendant pled guilty in this case, the Port Authority prohibited him from working on any Port Authority funded job sites and the defendant retired. (Id.).

This is the defendant's third criminal conviction and first felony. On July 26, 2003, the defendant was arrested in connection with his involvement in a motor vehicle accident on Staten Island. After the accident, the defendant refused to take a breathalyser test, although police officers noted that the defendant's speech was slurred and he had the smell of alcohol on his breath. (PSR ¶ 43). On September 24, 2003, the defendant pled guilty in Richmond County Criminal Court to driving while intoxicated, a misdemeanor, and received a conditional discharge and a $500 fine. (PSR ¶ 41).

On October 11, 2011, the defendant was arrested in connection with his possession of a forged instrument, which the defendant presented to Port Authority officials at the WTC job site in an attempt to obtain a site identification badge. (PSR ¶ 45). On March 22, 2012, the defendant pleaded guilty in New York County Criminal Court of attempted possession of a forged instrument in the third degree, a Class B misdemeanor, in violation of New York Penal Law Section 170.20, and was sentenced to a fine of $500. (PSR ¶ 44).

In addition, on April 25, 1995, the defendant – who was 39 years old at the time – was arrested and charged in Monmouth County Superior Court in New Jersey with possession of a controlled dangerous substance. (PSR ¶ 47). The charge was dismissed after the defendant completed a 12-month diversion program and paid a $1,050 fine. (PSR ¶ 48).

---

[2] As set forth in the Government's letter to the Court dated January 6, 2014, and as reflected in the PSR, the correct maximum fine in this case is $250,000, and the applicable Guidelines fine range is $3,000 to $30,000. (PSR ¶¶ 80, 82).

The defendant describes himself as an alcoholic. Until recently, the defendant was drinking to the point of intoxication three or four times per week. (PSR ¶ 63). Although the defendant used cocaine over a year-long period during his early 20s, he has disclaimed any other drug use. (PSR ¶ 62).

### D.     The PSR and Guidelines Calculation

The PSR calculates the total offense level of 12, which incorporates an eight-level enhancement based on a loss amount of $120,000, see U.S.S.G §§ 2E5.1(b)(2) & 2B1.1(b)(1)(E), and a two-level adjustment for acceptance of responsibility, see U.S.S.G. § 3E1.1(a).[3] (PSR ¶¶ 29-38). The PSR calculates the defendant's criminal history score to be two, resulting in a Criminal History Category of II. (PSR ¶ 46). Accordingly, the advisory Guidelines range is 12 to 18 months' imprisonment. (PSR ¶ 73). Under the advisory Guidelines, the defendant is not eligible for probation pursuant to U.S.S.G. § 5B1.1. (PSR ¶ 79).

Based on the 18 U.S.C. § 3553(a) factors, the Probation Office recommends a below-Guidelines sentence of six months' imprisonment. (PSR at p. 22). Probation further recommends that the defendant serve a one-year term of supervised release with a special condition requiring the defendant to participate in an alcohol abuse treatment program. (Id.). Although the Probation Office does not recommend a fine, the PSR notes that the defendant must forfeit $120,000 to the United States and pay a mandatory $100 special assessment. (Id.).

### Discussion

### A.     Applicable Law

The United States Sentencing Guidelines still provide strong guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

---

[3]     Although the Probation Office has applied the two-level adjustment for acceptance of responsibility, the PSR notes that "[b]ased on the defendant's recent assertions to the probation office [as set forth in the PSR at paragraphs 25 and 26], it is clear that he has not accepted responsibility for his criminal conduct. In relation, an argument could be made that [the defendant] is not entitled to a reduction in the Guideline calculations under § 3E1.1." (PSR at p. 23). If the adjustment for acceptance of responsibility were withheld, the applicable Guidelines range would be 18 to 24 months' imprisonment based on an Offense Level of 14 and a Criminal History Category of II.

Hon. Richard J. Sullivan
January 8, 2014
Page 5 of 7

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7).  See Gall, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B.    Discussion**

Application of the Section 3553(a) factors to the facts of this case counsels in favor of a sentence within the advisory Guidelines range.  In light of the serious nature of the instant offense, and the history and characteristics of this defendant, the Government opposes the defendant's request for a sentence of probation.  The defense points to no substantial mitigating circumstances that would warrant such a significant departure from the applicable Guidelines sentence.

A sentence of imprisonment in this case is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for this defendant.  See 18 U.S.C. § 3553(a)(2)(A).  The seriousness of the defendant's criminal conduct requires little elaboration.  Over the course of approximately one year, the defendant received approximately $120,000 in compensation from contractors building the WTC Transportation Hub for hours of work that he never performed.  The defendant's acceptance of these payments from his employers was a clear violation of 29 U.S.C. § 186, the purpose of which statute is to avoid the danger of employers improperly influencing union representatives, such as the defendant.  See generally United States v. Novak, 443 F.3d 150, 154 (2d Cir. 2006); Baum v. Nolan, 853 F.2d

1071, 1074 n.2 (2d Cir. 1988).  As the shop steward for Local 40 at the WTC Transportation Hub job site, the defendant had responsibility for, among other things, representing his fellow union members in grievances with management, ensuring that the hours worked by Union members at the job site were accurately reported to the Union, and ensuring compliance with the terms of the CBA.  The defendant also had responsibility for helping ensure safety at the job site.  The defendant's acceptance of unlawful payments from the contractors threatened to undermine his effectiveness and impartiality in the execution of these duties on behalf of his fellow Union members.

Furthermore, it is questionable whether the defendant has truly accepted responsibility for his conduct and recognized the seriousness of his crime.  Although the defendant cooperated with agents following his arrest and participated in two proffers with the Government, his recent comments to the Probation Office during the presentence interview process (see PSR ¶¶ 25 & 26) call into doubt his acknowledgment of his guilt.  In a letter to the Court dated January 6, 2014, the defendant's counsel represents that the defendant wishes to "delete paragraph 26" from the PSR and that at sentencing the defendant "will accept full responsibility for his conduct."  Letter from Carlos A. Martir to the Honorable Richard J. Sullivan, re: United States v. John Ryan, No. 13 Cr. 258 (RJS), Jan. 6, 2014.  Assuming the defendant demonstrates full acceptance of responsibility at the sentencing proceeding, the Government will not oppose a two-level adjustment pursuant to U.S.S.G. § 3E1.1.[4]  The Government agrees with the Probation Office, however, that the defendant's apparent failure to acknowledge the seriousness of his offense is a factor that supports a sentence that includes a term of incarceration.  (See PSR at 23).

A sentence that includes a term of imprisonment is also necessary to deter similar criminal conduct by others.  See 18 U.S.C. § 3553(a)(2)(B).  Such a sentence will send a clear message to employers and union officials alike that unlawful payments to union representatives – which threaten to corrupt labor-management relations – will not be tolerated.  In this case, the defendant received approximately $120,000 in compensation for hours of work when we was not even present at the WTC Transportation Hub and, therefore, could not possibly have fulfilled his duties as shop steward for his fellow Union members.  A Guidelines sentence would justly punish such conduct and deter other similarly situated union representatives from accepting prohibited payments from employers for "no-show" work.

The circumstances raised by the defendant in his memorandum, even when considered in the aggregate, do not warrant the variance from the applicable Guidelines range that he requests.  Although the defendant undoubtedly worked very hard over the course of his long career as an

---

[4] As set forth in the parties' plea agreement, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility, notwithstanding the parties' stipulation concerning the applicable Guidelines sentencing range, if the defendant fails clearly to demonstrate acceptance of responsibility – to the satisfaction of the Government – through his conduct prior to the imposition of sentence.

iron worker with Local 40 (see Def. Mem. at 3), he also violated the trust placed in him as shop steward by accepting payments from the very employers with whom he was charged with dealing on behalf of his fellow Union members.  Counsel notes that the defendant is married and is supported by his family, but fails to identify any extraordinary familial obligations that might justify a downward variance.  (See id.).  In addition, although the PSR notes that the defendant has diabetes and high blood pressure, the defense does not suggest that these conditions constitute extraordinary health issues that would warrant a downward variance in this case.  Finally, besides simply asserting that a sentence of five years' probation is appropriate here, counsel fails to explain how such a sentence would be sufficient to achieve the goals of sentencing under 18 U.S.C. § 3553(a).  (See id. at 4).

Accordingly, the Government respectfully requests that the Court impose a sentence within the advisory Guidelines range of 12 to 18 months' imprisonment.  Such a sentence is sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing under Section 3553(a)(2).  Specifically, the recommended sentence will achieve just punishment for the defendant's serious crime, promote respect for the law, and deter others from committing similar crimes.  The Government further requests that the Court impose a Guidelines term of supervised release with the conditions recommended by the Probation Office and order the defendant to forfeit $120,000 to the United States in accordance with the Consent Order of Forfeiture executed by the parties at the time of the defendant's guilty plea.

## Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the advisory Guidelines range of 12 to 18 months' imprisonment.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:  _____
Daniel S. Noble
Assistant United States Attorney
(212) 637-2239

cc:     Carlos Martir, Esq. (by e-mail)